UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PUMPONATOR INC., )
a South Carolina Corporation, )
                                                            )
                Plaintiff, )
                                       )
                v. ) No. 11-CV-3956
                                       )
WATER SPORTS, LLC, )
an Illinois limited liability company, )
KETZ & ASSOCIATES INC., )
a Minnesota corporation, )
and BRAD KETZ, an individual, )
                                        )
                Defendants. )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

      Plaintiff Pumponator Inc., a South Carolina Corporation and manufacturer of the water-balloon filling device called the "Pumponator," brings five claims against Defendants Water Sports, LLC ("Water Sports"), an Illinois limited liability company, Ketz & Associates Inc. ("KAI"), a Minnesota corporation, and Bradley Ketz, an individual. Specifically, Pumponator Inc. alleges that KAI and Mr. Ketz are liable for breach of contract, breach of fiduciary duties, and breach of the duty of loyalty. Pumponator Inc. also alleges that the conduct of all three defendants, improperly selling Water Sport's competing water-balloon filling device, constitutes trade dress infringement and unfair competition, actionable under Section 43(a) of the Lanham Act and under common law. Presently before us is KAI and Mr. Ketz' (collectively "Ketz Defendants") motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(2) for

1

lack of personal jurisdiction. The motion comes after limited jurisdictional discovery. For the reasons set forth below, we deny the Ketz Defendants' motion.

## BACKGROUND

**A. Pumponator Inc.'s Business Relationship with the Ketz Defendants**

Pumponator Inc. "designed, developed, and now sells" a water-balloon filling device called the "Pumponator." (Compl. ¶¶ 1–2.) Donna Ramere, Pumponator Inc.'s sole owner and registered agent, developed the concept of a water-balloon pumping device in her garage while working with her granddaughter to find a way to avoid bursting water balloons while filling them with a faucet or hose. (*Id.* ¶¶ 1,12.) Her solution, the Pumponator—a modified garden sprayer—has won awards for its utility of pumping water into a balloon and has patent applications pending for its utility and exterior shape. (*Id.* ¶¶ 13–14, 16–17.) Pumponator Inc. sells the Pumponator throughout the United States. Sales are made online and in retail stores; the latter is orchestrated through "a network of commissioned, independent sales representatives" that market and sell the Pumponator. (*Id.* at ¶ 2; Bradley Ketz Aff. ¶ 4.)

KAI is in the business of representing toy and gift manufacturers as a sales agent. (*Id.* ¶¶ 1–2.) Bradley Ketz is the sole owner and director of KAI, which has its sole showroom and place of business located in Minneapolis, Minnesota. (*Id.*) Neither Mr. Ketz, nor KAI, "have ever owned real estate, paid income or property taxes, held bank accounts, voted, or maintained a personal office or telephone number in the state of Illinois." (*Id.* ¶ 3.) Starting in January 2010, KAI became a Pumponator Inc. commissioned sales agent, at which time KAI and Pumponator Inc. signed and executed a Sales Representation Agreement and a Confidentiality Agreement providing that KAI would "not use or disclose" confidential information. (Compl.

2

¶ 51; Ketz Aff. ¶ 5; Ketz Aff. Exs. 1–2.)

From January 2010 to February 2011, KAI sold the Pumponator to retail stores within its standard multi-state territory: Iowa, Minnesota, Nebraska, North Dakota, South Dakota, and Wisconsin. (*Id.* ¶ 5.) During this period, KAI booked over $100,000 in sales for Pumponator Inc. and earned a 15 percent commission. (*Id.* ¶¶ 5, 10 (equaling approximately $80,000 in 2010 and $24,000 in the first two months of 2011).) Meanwhile, Pumponator Inc. had at least two other sales representatives based in Chicago—Total Toy, Inc. and Rocket Rep, LLC—that were responsible for sales within the state of Illinois. (*Id.* ¶ 8.)

### B. Termination of Pumponator Inc.'s Relationship with the Ketz Defendants

On February 18, 2011, Ms. Ramere sent an email to Lori Ketz, wife of Mr. Ketz and a KAI staff member, providing "30 day notice that I am terminating the sales agreement that we have."[1] (Compl. Ex. C.) Ms. Ramere cited concern with Mr. Ketz. (*Id.* (stating that he is "unexcited about the Pumponator . . . [and] I can't have that kind of thinking on my team.").) Within a week, KAI began soliciting and signed a contract with Water Sports, manufacturer of the ItzaPump. The ItzaPump is a water-balloon filling station with a similar design to, and a competitor of, the Pumponator. (W.S. Answer ¶ 22; Compl. ¶ 34.) On March 12, 2011, KAI also sold ItzaPumps at a Minnesota sales show, despite its promise to sell the Pumponator at that

---

[1] The Sales Agreement seemingly requires only KAI to provide 30-day notice of termination to Pumponator, Inc. (*See* Ketz Aff. Ex. 1 (Sales Representative Agreement) ("[KAI] agrees to . . . [p]rovide [Pumponator Inc.] with a 30 day notice should [KAI] intend to terminate the agreement.").) However, both KAI and Pumponator Inc. act as if the agreement required 30-day notice from both parties and as if the agreement continued for this period after notice was given. (*See* Thornburg Conf. Decl. Ex. E, Ex. 22 (email from Lori Ketz to Ms. Ramere stating the contract's last day as March 21 and confirming the Pumponator's display at an upcoming March show); Thornburg Non-Conf. Decl. Ex. A, Ketz Dep. at 162:10–22 (Mr. Ketz agreeing that a 30-day termination period was in the contract he signed).)

3

show. (*Id.* at Exs. 22, 26.) Pumponator Inc. claims in this suit that the ItzaPump product infringes the Pumponator's trade dress and is likely "to deceive, confuse[,] and mislead purchasers" in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.* (2006), and Illinois trade dress law. (Compl. ¶ 34.)

## STANDARD OF REVIEW

In a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), when there is not an evidentiary hearing,[2] plaintiff bears the burden of showing a prima facie case of personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *see also RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). For purposes of a motion to dismiss based on personal jurisdiction, we treat the complaint's allegations as true unless defendants' affidavits controvert the allegations. *Logan Prods., Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir. 1996); *Adams v. Raintree Vacation Exch., LLC,* No. 10 C 3264, 2011 WL 1626561, at *3 (N.D. Ill. Apr. 28, 2011). Where the defendant submits an affidavit contesting personal jurisdiction, as the Ketz Defendants have, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. We resolve all factual disputes in the record in the plaintiff's favor, but we may accept as true those facts presented in the defendant's affidavit that remain uncontested. *Id.* at 782 ("[T]he plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record.").

---

[2] We deny the Ketz Defendants' motion for an evidentiary hearing. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

ANALYSIS

A.  Federal Due Process and Personal Jurisdiction

Personal jurisdiction "is an essential element of the jurisdiction of a . . . federal court" without which "the court is powerless to proceed to an adjudication." *Emp'rs Reins. Corp. v. Bryant*, 299 U.S. 374, 382, 57 S. Ct. 273, 277 (1937).  Unless a statute provides nationwide service, a federal court has jurisdiction over the defendant only if the state where the federal district court sits would provide for service of the defendant in a court of general jurisdiction.  Fed. R. Civ. P. 4(k).  In order for a plaintiff to show the existence of jurisdiction over an out-of-state defendant, the Illinois long-arm statute must authorize service of process on that defendant.  *Omni Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104–05, 108 S. Ct. 404, 409–10 (1987); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).

The broadest jurisdictional test that the Illinois long-arm statute provides is a catchall clause that allows jurisdiction "on any other basis now or hereafter permitted" under the Illinois Constitution and the U.S. Constitution.  735 Ill. Comp. Stat. 5/2-209©.  While the Illinois Constitution has its own guarantees of due process separate and independent from the U.S. Constitution, *Rollins v. Ellwood*, 141 Ill. 2d 244, 275, 565 N.E.2d 1302, 1316 (1990), the Seventh Circuit has not found a difference between the two constitutional inquiries.  *See, e.g.*, *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757 (7th Cir. 2010) ("[W]e are still unable to discern an 'operative difference between' the limits" of the two constitutional imperatives.); *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008) ("[N]o case has yet emerged where [federal] due process was satisfied . . . but not [satisfied] under the Illinois constitution.").

5

As such, we will merge these inquiries into a single test of federal due process.

A state's exercise of jurisdiction comports with federal due process if the defendant has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 443 (1940)). Only if a defendant can "reasonably anticipate being haled into court" in the state is jurisdiction constitutional. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S. Ct. 2174, 2183 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S. Ct. 559, 567 (1980)); *Kinslow v. Pullara*, 538 F.3d 687, 690 (7th Cir. 2008). The Supreme Court has also framed the inquiry as asking whether the defendant "purposefully avails itself" of the legal benefits and protections of the forum state. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958).

Personal jurisdiction can be general or specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872 (1984); *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). General jurisdiction requires the defendant's contacts be "continuous and systematic." *Helicopteros*, 466 U.S. at 416, 104 S. Ct. at 1873. This is a demanding standard approximating physical presence. *Tamburo*, 601 F.3d at 701; *Purdue*, 338 F.3d at 787, 787 n.16. As the Seventh Circuit has said, this standard "is demanding because the consequences can be severe: if a defendant is subject to general jurisdiction in a state, then it may be called into court there to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum." *Ubid, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010). Specific jurisdiction, on the other hand, requires that the

"litigation results from alleged injuries that 'arise out of or relate to' those activities" the "defendant has 'purposefully directed'" at the forum. *Burger King*, 471 U.S. at 472, 105 S. Ct. at 2182 (quoting *Helicopteros*, 466 U.S. at 414, 104 S. Ct. at 1872; *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 1478 (1984)).

Both parties extensively briefed whether general jurisdiction exists. However, since we find that the Ketz Defendants' alleged actions satisfy specific jurisdiction, we decline to address whether the Ketz Defendants meet the high standard of general jurisdiction.

**B. Specific Jurisdiction**

To decide whether we may exercise specific personal jurisdiction over the Ketz Defendants, we follow the three distinct steps set out by the Seventh Circuit:

> (1) identify the contacts the defendant has with the forum; (2) analyze whether these contacts meet constitutional minimums and whether exercising jurisdiction on the basis of these minimum contacts sufficiently comports with fairness and justice; [and] (3) determine whether the sufficient minimum contacts, if any, arise out of or are related to the causes of action involved in the suit.

*GCIU*, 565 F.3d at 1023; *see also Hemi Grp.*, 622 F.3d at 758–59. "[T]he proper focus of the analysis is on defendant's conduct and whether plaintiff's claim arises out of that conduct." *GCIU*, 565 F.3d at 1024.

*I. Ketz Defendants' Contacts with Illinois*

For the duration of its contract with Pumponator Inc., KAI's sole employee visit to Illinois was a "single day Target Stores computer training session" at the request of a KAI vendor. (*Id.* ¶ 6.) Admittedly, that same vendor is headquartered in Illinois and Mr. Ketz visited its office once. (Thornburg Non-Con. Decl. Ex. B, Ketz Dep. at 123:25–124:12.) Beyond that

7

single training session, KAI did not attend trade shows, meetings, or visit stores in Illinois to place manufacturers' products in the state. (Ketz Aff. ¶ 6.)

KAI does however acknowledge selling a Pumponator order for over $150 to an Illinois retail store, but asserts that the sale occurred at an Iowa trade show. (*Id.* ¶ 9.) More significantly, the record reveals numerous emails in late February 2011 and early March 2011 from Mr. Ketz and Lori Ketz to Water Sports' employees. Many of these emails were responses to messages from Water Sports, which included Water Sports' address in Plano, Illinois. (Thornburg Conf. Decl. Ex. E, Exs. 4, 14, 16–17, 19–21, 24.) KAI's emails solicited Water Sports, an Illinois company, to sell a product competing with the Pumponator, and some allegedly revealed Pumponator Inc.'s confidential information, including sale terms and units sold. For instance, Lori Ketz wrote on February 25, 2011 that "Pumponator is selling well in United Hardware and we could sub that out immediately if you give us the green light on that account." (*Id.* at Ex. 14.) Later that day, Mr. Ketz wrote to Water Sports that the buying consortium Mid-States was "going to order Pumponators from [him]" and that Water Sports should let him know "if there is an opportunity before I book these orders with Pumponator." (*Id.* at Ex. 16.) Further, on March 17, 2011, Lori Ketz promised that Mr. Ketz would get Water Sports the "number of pumpopukers [sic] we sold last year." (Thornburg Conf. Decl. Ex. E, Ex. 24.) (*See also id.* at Ex. 21 (Lori Ketz on March 4, 2011 writing ". . . net 60 terms with Pumponator this year. Can we offer them the same terms . . . or better?"); *id.* at Ex. 25 (Lori Ketz on March 23, 2011 writing ". . . net terms with Pumponator. Can we offer them the same terms?").)

Furthermore, KAI is currently profiting from its relationship with Illinois. As of discovery in this suit, KAI had received $952.36 in commissions from Water Sports. (Ketz Aff. ¶ 12). Additionally, while it is admittedly difficult to tell the intended location of a sale because, per the industry custom, KAI records the Minnesota storeroom as the location of all sales regardless of shipping location (Ketz Supp. Aff. ¶¶ 4–5; Thornburg Non-Conf. Decl. Ex. A at 167:2–7), KAI's sales include at least three buyers that possibly sold the ItzaPump products within Illinois. For example, CBR Specialty Stores, has locations at Chicago O'Hare Airport and Chicago Midway Airport, (Resp. at 5 n.5; Thornburg Conf. Decl. Ex. D, Ketz Dep. at 217:9–19) and KAI sold CBR $369.90 worth of Water Sports' products on June 3, 2011 and $246.60 worth of ItzaPumps on August 22, 2011. (Thornburg Conf. Decl. Ex. W, June & Aug. 2011.) Another buyer, the Mid-States Distribution Company has at least three different types of stores located in Illinois: Big R, Rural King, and Quincy. (Thornburg Non-Conf. Decl. Ex. A at 166:19–168:25.) KAI sold Water Sports products to Mid-States consortium totaling approximately $142 in May 2011, $4,113 in June 2011, $8,679 in July 2011, and sold it 288 units in August 1, 2011. (Thornburg Conf. Decl. Ex. W, May to Aug. 2011.)

While not directly related to the sale of the Pumponator or ItzaPump, the record also indicates that approximately 147 Illinois storefronts placed orders with KAI during the last seven years. (Resp. at 6–7; Thornburg Conf. Decl. Exs. H–I.) KAI maintains that these orders shipped to Illinois storefronts are not contacts with Illinois, explaining that some of the buying groups have Illinois-based stores, but they also have Minnesota-based offices and attend trade shows in Minneapolis. (Ketz Supp. Aff. ¶¶ 2, 4.) As Mr. Ketz stated, "these sales are the result of Illinois-based retailers *coming to KAI in Minnesota*—not us going to them." (*Id*. ¶ 4.) However,

9

Mr. Ketz does admit visiting two stores that are members of Mid-States Distributing, to solicit business (Thornburg Non-Conf. Decl. Ex. A at 146:10-19), and may have visited Quincy, Illinois for the same purpose. (*Id.* at 154:12–155:22.)

Finally, KAI has represented multiple Illinois toy manufacturers other than Water Sports, including Aeromax, AMAV, Best of Best, Learning Resources, and Neat Oh International. (Thornburg Non-Conf. Decl. Ex. A at 90:10–91:5; *id.* at Exs. R–W.) Over the last three years, KAI has sold over $1.2 million for these vendors. (Ketz Aff. ¶ 14.) KAI routinely communicated by email, phone, and fax with these Illinois manufacturers regarding potential sales leads and other information. (*Id.* Ex. A at 102:10–105:2.) The Ketz Defendants respond that these sales were only a small portion (6.8 percent) of the "total sales for *all* vendors [KAI] represents." (Ketz Aff. ¶ 14.) The Ketz Defendants also maintain that these sales, like sales to Illinois stores, were made at their Minnesota salesroom. (*Id.*)

ii. *Minimum Contacts Comport with Fairness and Justice*

"[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King*, 471 U.S. at 474, 105 S. Ct. 2183 (citing *International Shoe Co.,* 326 U.S. at 316, 66 S. Ct. at 158.) As explained above, the relevant question is whether the Ketz Defendants could foresee being haled into court in Illinois. *Id.* To determine this, we in turn look at the defendant's actions, not the unilateral activities of others, and question whether the Ketz Defendants "purposefully avial[ed themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson,* 357 U.S. at 253, 78 S. Ct. at 1239–1240.

We find that the Ketz Defendants took sufficient actions to create a substantial connection with Illinois. KAI sold goods to 147 Illinois storefronts over the last seven years, sold over $1.2 million worth of goods on behalf of Illinois manufacturers in the last three years, and visited Illinois merchants on more than one occasion. Ketz and other KAI employees also sent numerous emails into Illinois in order to further business relationships with companies located in the state. Further, while KAI was still under contract with Pumponator Inc., KAI agreed to be bound by Illinois choice of law and forum selection clauses in its agreement with Pumponator Inc.'s competitor Water Sports. (Thornburg Conf. Decl. Ex. E, Ex. 4, at DWS525.) Even if the sales into Illinois were not sufficient alone, we believe that there is enough to establish personal jurisdiction in light of the Ketz Defendants' other connections with the state,. *See Burger King*, 471 U.S. at 475 n.18, 105 S. Ct. at 2184 (1985) ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."); *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 820 (N.D. Ill. 2008) (same). It is not significant that the defendants were not frequently present in Illinois. "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King*, 471 U.S. at 476, 105 S. Ct. 2184 (citing *Keeton*, 465 U.S. at 774–775, 104 S. Ct. at 1478). Further, ItzaPump sales in Illinois could not be an unexpected result. KAI sold numerous products over the last seven years to Illinois stores and Mr. Ketz has visited Illinois retailers to increase sales. While we are sympathetic to KAI's contention that all such purchases should be recorded as Minnesota purchases per the industry standard, we cannot ignore the efforts KAI appears to have made in travel and sales to Illinois stores. As such, we conclude that

there are the minimum contacts necessary for due process.

Exercising personal jurisdiction over the Ketz Defendants would similarly not violate traditional notions of fair play and substantial justice. In making this determination, we may "evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2184 (citing *World-Wide Volkswagen Corp.,* 444 U.S. at 292, 100 S. Ct. at 564).

As mentioned above, the Ketz Defendants have significant contacts with Illinois. Comparatively, the burden on the Ketz Defendants to defend a suit in Illinois, particularly in light of their recent accession to Illinois law in the related contract with Water Sports, is not enough to justify dismissal of this case. Further, while the State of Illinois may have only an indirect interest in the dispute between these two parties, the State clearly has an interest in the overall action, including Illinois Defendant Water Sports and sales made to Illinois retail stores. Similarly, both judicial efficiency and Pumponator Inc.'s interest in obtaining relief clearly support keeping all three Defendants together.

*iii. Relatedness*

Finally, when analyzing contacts to determine specific jurisdiction, "past contacts should either bear on the substantive legal dispute between the parties or relate to the operative facts of the case. Thus, 'the action must directly arise out of the specific contacts between the defendant and the forum state.'" *GCIU*, 565 F.3d at 1024 (citing *RAR*, 107 F.3d at 1277) (internal citations

and quotation marks omitted). As the two groupings of claims—breach of contract and trade dress infringement—arise out of different conduct, we analyze each separately.[3]

   *a. Breach of Contract Claims*

Relying on *RAR*, 107 F. 3d 1277, the Ketz Defendants argue that only the dealings between the parties are relevant to this analysis, and as there are no Illinois case-related contacts, we lack jurisdiction. (Mem. at 12.) While true that the disputed contract was between a South Carolina company and a Minnesota company and that KAI's performance on the contract was largely outside Illinois, we find that the substantive legal dispute arises out of contacts with Illinois. Specifically, Pumponator Inc. alleges that KAI breached the parties' contract and violated both its fiduciary duty and its duty of loyalty by entering a competing contract and sharing confidential information with Water Sports. These alleged breaches, moreover, occurred with an Illinois company via emails directed to its Illinois office. Thus Pumponator Inc.'s breach of contract claims arise out of KAI's contacts with Illinois. *See generally Heritage House Rests., Inc. v. Cont'l Funding Grp., Inc.*, 906 F.2d 276, 281 (7th Cir. 1990) ("Both the contract and agency claims are directly based on Continental's call to renew the certificates of deposits and its follow-up conversation ensuring the security of those deposits."); *Pasulka v. Sykes*, 131 F. Supp. 2d 988, 993 (N.D. Ill. 2001) (The "claim for breach of the partnership agreement and fiduciary duty 'lies in the wake' of those [telephone] communications, and this is sufficient to establish that Mr. Pasulka's cause of action 'arises out of' Mr. Sykes' telephone contacts with Illinois."). Since KAI directed emails into Illinois for a purpose alleged to violate

---

[3] Personal jurisdiction must also be tested against all defendants, individually. *Keeton*, 465 U.S. at 781 n.13, 104 S. Ct. at 1482 n.13. However, with the exception of a single footnote (Mem. at 11 n.6), both parties treat Mr. Ketz's personal jurisdiction contacts within their analysis of KAI. We accept the parties' treatment and deal with the footnote in Section C below.

its contract with Pumponator Inc., we conclude that there are sufficient related contacts for this court to exercise personal jurisdiction over Pumponator Inc.'s contract claims against the Ketz Defendants.

*b. Intellectual Property Claims*

Pumponator Inc.'s trade dress claims under the Lanham Act and Illinois common law also arise out of contacts with Illinois. The parties agree that we can exercise specific jurisdiction over Pumponator Inc.'s intellectual property claims if we find that Pumponator Inc. sustained injuries in Illinois as a result of the Ketz Defendant's alleged unlawful actions. *See e.g. Lifeway Foods, Inc. v. Fresh Made, Inc.*, 940 F. Supp. 1316, 1319 (N.D. Ill. 1996) ("In tort law, the 'key operative factors for determining the locus of the tort and the defendant's amenability to suit at that locus are normally the place where plaintiff sustained its injury' . . . Damage to intellectual property rights takes place where the owner suffers the damage." (quoting *Acrison, Inc. v. Control and Metering Ltd.*, 730 F. Supp. 1445, 1448 (N.D. Ill. 1990)). Pumponator Inc. has presented evidence allowing an inference that KAI sold ItzaPumps, intending or with knowledge that they would end up in Illinois stores. The record includes numerous sales of Water Sports' products to Hobby Town, Mid-States Distributing, and CBR, which all have Illinois stores. The record is not clear that these sales actually resulted in ItzaPumps being placed in Illinois stores. However, KAI, the party in the best position to know if these goods were sold in Illinois, presented no evidence to contradict Pumponator Inc.'s allegations. Therefore, we resolve the factual disputes in favor of Pumponator, Inc. and find that it has established a prima facie case by identifying distributors with Illinois stores that purchased alleged infringing products through KAI. As such, we may exercise specific jurisdiction over

the intellectual property claims.

## C. Fiduciary Shield Doctrine

Finally, we must address the Ketz Defendants' request to treat Mr. Ketz separately under the fiduciary shield doctrine. (Mem. at 11 n.6.) The fiduciary shield doctrine "denies personal jurisdiction over an individual whose presence and activity in the state in which the suit is brought were solely on behalf of his employer or other principal." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994). The doctrine is equitable, discretionary, and not absolute. *Id.* at 914 (citing *Burnhope v. Nat'l Mortg. Equity Corp.*, 208 Ill. App. 3d 426, 439, 567 N.E.2d 356, 363 (1st Dist. 1990)). The doctrine does not apply when the defendant's "personal interests motivated" his actions or "when [the defendant's] actions are discretionary." *Zurich Capital Mkts., Inc. v. Coglianese*, 388 F. Supp. 2d 847, 860 (N.D. Ill. 2004); *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 847 (N.D. Ill. 2009).

As the sole owner of KAI, Mr. Ketz cannot say that his contacts with Illinois were "solely on behalf of his employer" without personal interest or discretionary choice to make these contacts. Courts have rejected applying the doctrine for defendants with less control of their companies than Mr. Ketz had over his. *See, e.g.*, *Catapult Commc'ns Corp. v. Foster*, No. 06 C 6112, 2009 WL 1469813, at *3 (N.D. Ill. May 27, 2009) (refusing to apply shield to CEO's discretionary acts in Illinois where defendant had significant financial stake in the company); *Consumer Benefit Servs. v. Encore Mktg. Int'l Inc.*, No. 01 C 6985, 2002 WL 31427021, at *4 (N.D. Ill. Oct. 30, 2002) (refusing to apply shield to defendants owning 32.49% and 20.35% of stock); *Burnhope*, 208 Ill. App. 3d at 440, 567 N.E.2d at 364 (refusing to apply

shield to defendant who owned 84% of company's stock). As such, we find that the fiduciary shield does not protect Mr. Ketz from personal jurisdiction in Illinois.

## CONCLUSION

For the reasons set forth above, we hold that specific personal jurisdiction exists against both KAI and Mr. Ketz. The motion to dismiss for lack of personal jurisdiction is denied. It is so ordered.

Marvin E. Aspen
United States District Judge

Dated: Chicago, Illinois
April 5, 2012